# SOUTHWESTERN BELL TELEPHONE COMPANY
## *v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 86-22                                    720 S.W.2d 924

Court of Appeals of Arkansas
En Banc
Opinion delivered December 17, 1986

*Durward D. Dupre* and *Garry S. Wann*; and *Friday, Eldredge & Clark*, by: *Herschel Friday* and *Jeff Broadwater*, for appellant.

*Lee McCulloch*, for appellee.

JAMES R. COOPER, Judge. Southwestern Bell Telephone Company appeals that portion of a rate case decided by the Arkansas Public Service Commission dealing with the calculation of the Company's cost of capital and the resulting calculation of its required return on its rate base. The Company argues four points for reversal, all of which concern the proper treatment to be accorded investment tax credits (ITC's) and accumulated deferred income taxes (ADIT's) in calculating the correct rate of return.

Bell's first point for reversal is that the manner in which investment tax credits and accumulated deferred income taxes were treated by the Commission was arbitrary, capricious, unreasonable, and not supported by substantial evidence. Secondly, Bell claims that the treatment given ADIT's and ITC's arbitrarily mismatches tax benefits with rate base and expense items. Thirdly, Bell alleges that the treatment given ADIT's and ITC's by the Commission violates federal tax law and regulation, and finally, Bell claims that the Commission's treatment of ADIT's and ITC's violates due process of law.

We agree with Bell on its first point and reverse on that point.

Southwestern Bell's rate of return was determined in this case by what is known as the "weighted cost of capital" approach. In using this approach, the various components of a company's capital structure are weighted as to their cost with respect to their relative proportions in the company's total capital structure and are then added together to obtain an overall figure for the company's cost of capital. The weighted cost of capital is then translated into the rate of return on rate base,[1] and the company is permitted the opportunity to earn that return on its investment.

Both Bell and the Commission agree that ITC's and ADIT's should be recognized in setting rates, but they differ as to how they should be recognized. These tax benefits accrue on a company's books by virtue of investment in plant and equipment upon which the company earns a return. Since ratepayers pay a return on that plant and equipment and thereby supply the funds which generate the tax benefits, the parties agree that ratepayers should receive some consideration in ratemaking for the benefits generated by those funds.

Both parties agree that ITC's and ADIT's can and should be given regulatory treatment in either one of two "theoretically equivalent" methods: (1) a deduction from rate base, or (2) inclusion in the company's cost of capital calculation as a cost-free source of capital. The second method was employed in this case by the Commission. In the first method, the amount of tax benefit attributable to Arkansas plant and equipment would be derived from the company's accounts and deducted from the company's rate base. In the second method, the tax benefits are included in the cost of capital calculation, or an adjustment is made to account for the tax benefit after the company's cost of capital is calculated without the benefits being included. For purposes of this appeal, the parties agree that Bell's Arkansas intrastate rate base is $732,715,000.00; that the total of ITC's and ADIT's attributable to Bell's Arkansas investment is $109,154,000.00 (which is the sum of the amounts carried in Accounts Nos. 174 and 176 on the Company's books); and that Arkansas customer deposits total $3,828,000.00, on which the

---

[1] "Rate base" is the net value of a company's investment in plant and equipment dedicated to providing utility service to ratepayers.

Company pays six percent interest. Further, for purposes of this appeal, the parties do not quarrel with Bell's capital structure as adopted by the Commission, nor do they disagree that the Commission's calculation of Bell's cost of capital is 11.719% without any adjustment for ITC's and ADIT's. There also seems to be no question but that 14.81% of Arkansas intrastate rate base is attributable to ADIT's and ITC's, and that 16.72% of Bell's total company rate base is attributable to these tax benefits.[2]

As noted above, the Commission calculated Bell's weighted cost of capital to be 11.719%. This calculation included total company common equity bearing a cost of 13.5% and total company debt carrying with it a cost of just over 9.5%. However, the Commission included Arkansas-only customer deposits, which, as noted earlier, carry a cost of 6.0%. After calculating the weighted cost of capital, the Commission then adjusted that figure to account for 16.72% total company ITC's and ADIT's, yielding an overall rate of return to be allowed on rate base of 9.76%. Applied to the Company's Arkansas rate base of $732,715,000.00, the required earnings on rate base as allowed by the Commission are $71,512,984.00.

The Company complains that use of company-wide ITC's and ADIT's, as opposed to Arkansas-only ITC's and ADIT's,[3] is incorrect and gives Arkansas ratepayers the benefit of tax savings generated by investments they have not supplied. According to Bell, if the Commission's methodology is used and the weighted cost of capital is adjusted to reflect 14.81% of Arkansas-only ITC's and ADIT's, the resulting rate of return is 9.98% and yields a required earnings on rate base figure of $73,124,957.00. Thus, alleges Bell, the Commission's calculation understates required earnings by $1,611,973.00.

We note that the "theoretically equivalent" method whereby ITC's and ADIT's are deducted from intrastate rate

---

[2] Besides Arkansas, Bell operates in four other states and has interstate facilities regulated by the federal government.

[3] Arkansas-only ITC's and ADIT's have been used consistently by the Commission in the past and, in fact, were used in the Commission's first order in this case, which was superseded on rehearing by the final order utilizing the calculations which are the subject of this appeal.

base would yield a required earnings on rate base of $73,075,113.00, which is a net difference of only $49,844.00 from the calculation Bell claims the Commission should have made in using the method it applied.[4]

■ Arkansas Statutes Annotated Section 73-229.1 (Supp. 1985) limits and governs our review as follows:

> The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. The review shall not be extended further than to determine whether the Commission's findings are so supported by substantial evidence, and whether the Commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or of the State of Arkansas.

■ When reviewing an order of the Public Service Commission, we give due regard to the limitations on the scope of our judicial review and the expertise of the Commission. The Commission's findings of fact are not disturbed on appeal if supported by substantial evidence, which is a question of law. In addressing the questions of law raised on appeal, we may not pass upon the wisdom of the Commission's actions or judge whether the Commission has appropriately exercised its discretion. Usually, this Court must defer to the expertise of the Commission, which derives its ratemaking authority from the legislature. However, our review is not a mere formality, and we must determine whether there has been an arbitrary or unwarranted abuse of the Commission's discretion, although considerable judicial restraint should be observed in finding such an abuse. This Court does not advise the Commission how to discharge its functions in arriving at findings of fact or in exercising its discretion, and our review of the reasonableness of the actions of the Commission relates only to findings of fact and to a determi-

---

[4] As noted earlier, Arkansas intrastate rate base is agreed to total $732,715,000.00, and ITC's and ADIT's on the Company's books total $109,154,000.00. The "rate base approach" would then require that the difference, $623,561,000.00, have the weighted cost of capital figure of 11.719% multiplied against it, which yields a required earnings on rate base of $73,075,113.00.

nation of whether its actions were arbitrary. *Southwestern Bell Telephone Company* v. *Arkansas Public Service Commission*, 18 Ark. App. 260, 715 S.W.2d 451 (1986).

The Commission is free, within its statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances. No public utility has a vested right to any particular methods of valuation or rate of return, and the Commission has wide discretion in choosing its approach to rate regulation. Generally, this Court is not concerned with the methodology used by the Commission in arriving at the result as long as the Commission's action is based on substantial evidence. It is the result reached, not the method employed or the theory, which primarily controls. Our inquiry is concluded if the Commission's regulator's decision is supported by substantial evidence and the total effect of the rate order is not unjust, unreasonable, unlawful or discriminatory. *Southwestern Bell*, *supra*; *Walnut Hill Telephone Company* v. *Arkansas Public Service Commission*, 17 Ark. App. 259, 709 S.W.2d 96 (1986).

We find the Commission's approach to ADIT's and ITC's to be inconsistent. While it is true that no company has a vested right to any particular method or formula, a utility does have a right to have whatever method or formula the Commission may choose to utilize applied in a consistent manner. In this case, no expert witness endorsed the tax benefit treatment used by the Commission. Bell witness Kaufman used total company debt and equity in his calculation of the Company's cost of capital, and adjusted for Arkansas-only ADIT's and ITC's. Kaufman did not include customer deposits in his cost of capital calculation. The Attorney General's witness Wilson used total company equity and debt and adjusted for Arkansas-only ADIT's and ITC's, as had Kaufman. However, witness Wilson also used Arkansas-only customer deposits in his calculation. PSC staff witness Kilburn took a total-company approach to her cost of capital calculation, using total company debt, equity, customer deposits and ADIT and ITC in her calculation. She testified that, because all dollars are fungible,[5] it is not possible to distinguish what specific

---

[5] According to Kilburn, the concept of "fungibility" means that, once dollars are pooled (into the funds of a multi-state utility), they cannot later be traced back to a source

investment dollars represented by the various components of a company's capital structure support a specific portion of the Company's rate base in a particular jurisdictional area. She testified that the cost of capital for Southwestern Bell on a total company basis was the best way of deriving the required return the Company should be allowed to earn on its rate base.

Kaufman recommended an overall rate of return of between 11.16% and 11.40%. Wilson recommended a return of approximately 10.23%, and Kilburn recommended a return of 9.83%. No witness sponsored any testimony which embraced the 9.76% return calculated by the Commission in its final order.

■ While we do not intend to suggest any particular method of determining a company's cost of capital nor the particular ratemaking treatment to be given ITC and ADIT, we hold that, when the Commission selects a particular method advocated by an expert witness, the methodology selected should be applied in a manner consistent with the rationale and theory underlying the methodology.

Here, the expert witnesses agreed that total company equity and debt cannot be practicably segregated on a jurisdictional basis, and that a total company approach to these two components of capital structure was appropriate. The Commission apparently agreed with that concept. Witnesses Kaufman and Wilson testified that Arkansas-only ITC and ADIT amounts were susceptible of determination on a jurisdictional basis, and Wilson further testified that Arkansas jurisdiction-only customer deposits were likewise identifiable and should be included in the Company's cost of capital calculation; Kilburn, as noted earlier, testified that Arkansas jurisdiction-only dollars were indistinguishable and, consequently, she advocated a total-company approach throughout the rate calculations. The Commission apparently agreed with Wilson that customer deposits of nearly $4,000,000.00 bearing a cost of 6.0% were identifiable, but disagreed that Arkansas-only ITC and ADIT were identifiable on a jurisdiction-only basis. Accordingly, the Commission's final order used total company debt and equity along with Arkansas-

---

in any particular state.

only customer deposits and then adjusted to account for total-company ITC and ADIT. Therefore, the Commission adopted portions of all the expert witnesses' theories and disregarded other portions of the expert witnesses' theories. We find the Commission's approach in this particular instance to be arbitrary and unreasonable, as well as internally inconsistent in that the Commission, on the one hand, agreed that customer deposits were identifiable on a jurisdictional basis but, on the other hand, did not agree that ITC and ADIT could be identified on a jurisdictional basis.

We do not agree with Bell's contention that the inclusion of total company amounts of ITC and ADIT in calculating its cost of capital violates the Internal Revenue Code and IRC Regulations. Bell argues that Section 167 of the Internal Revenue Code and regulations require a consistency between ADIT as used to determine tax liability and as used in the capital structure. The Commission, on the other hand, seems to hold that the problem is simply one of timing, and not jurisdictional allocations, and that the Internal Revenue Code sanctions these timing differences. Bell claims that the Commission's action violates the I.R.C. by including more deferred tax than was actually shown on the books of the Company. This, Bell contends, could cause the IRS to take the position that Bell had not used a normalization method of regulated accounting as defined in IRS Reg. Section 1.167(L) - 1(h)(6)(i), which in turn could result in the loss of tax benefits.

We think that Bell's argument is speculative at this juncture and deals with possibilities which may or may not come to pass.

Finally, Bell argues that due process requires the Commission to make jurisdictional separations. We do not agree. No utility has a vested right to any particular method or formula. *Southwestern Bell*, 18 Ark. App. 260; *Walnut Hill*, 17 Ark. App. 259. As noted earlier, due process does require that, if the Commission elects to use a particular formula, the formula should be applied in a consistent manner. The requirements of due process do not extend so far as to mandate that a particular method or formula be used.

We reverse and remand, with directions that the Commission shall recalculate the appellant's appropriate rate of return, giving proper and consistent consideration to Investment Tax

Credits and Accumulated Deferred Income Taxes, and applying the methodology selected in a consistent manner throughout.

Reversed and remanded.

GLAZE and CORBIN, JJ., concur.

TOM GLAZE, Judge, concurring. I concur with the majority's holding reversing the Commission in this case.

The problem in this case is precisely the type problem about which I warned in my concurring opinion in *Southwestern Bell Telephone Company* v. *Arkansas Public Service Commission*, 18 Ark. App. 260, 715 S.W.2d 451 (1986): when the Commission adopts a particular methodology, it should apply that formula in a correct and consistent manner. This court affirmed the Commission in that case, because the result reached could not be said to be unfair. Here, the Commission's misapplication of the expert witnesses' methods of dealing with investment tax credits and accumulated deferred income taxes yields a result which is outside the realm of possibilities presented by the expert witnesses.

This case involves the question of the proper treatment to be accorded investment tax credits and accumulated deferred income taxes, and the expert witnesses seem to agree that these tax benefits may be accounted for through a cost of capital calculation or be deducted from rate base. It seems to me that the rate base approach is the most logical. After all, it is the investment in rate base which generates the tax benefits themselves, and there seems to be no problem in determining precisely the tax savings which are generated by Arkansas rate base. This approach is much simpler and seems to "true up" particular dollar amounts of tax savings with the particular rate base giving rise to those savings.

CORBIN, J., joins.