ARKANSAS OKLAHOMA GAS CORPORATION
v. ARKANSAS PUBLIC SERVICE COMMISSION

CA 88-260                                                770 S.W.2d 180

Court of Appeals of Arkansas
En Banc
Opinion delivered May 10, 1989

*Rose Law Firm, A Professional Association*, by: *Charles W. Baker*, for appellant.

*Arthur H. Stuenkel*, Asst. Counsel, for appellee Arkansas Public Service Commission.

JOHN E. JENNINGS, Judge. This is an appeal from an order of the Arkansas Public Service Commission denying Arkansas Oklahoma Gas Company's proposed surcharge under Ark. Code Ann. Sections 23-4-501 *et seq.* (1987) (Act 310 of 1981) for expenditures associated with asbestos removal from two of appellant's buildings in Fort Smith, Arkansas. Appellant, AOG, filed an Interim Rate Schedule for a surcharge pursuant to Ark. Code Ann. Section 23-4-501 *et seq.* (1987) on September 30, 1987. The application sought permission to surcharge its Arkansas ratepayers a $106,869.00 jurisdictional share of asbestos removal and related costs[1] for its main office building and a garage in Fort Smith, Arkansas. Appellant contends that it incurred those costs as a direct result of 40 C.F.R. Sections 61.140 through 61.153 and 29 C.F.R. Section 1926.58. Those federal regulations establish specific standards, procedures, and guidelines to be followed with regard to handling of asbestos materials.

The Commission established Docket Number 87-149-U for the purpose of considering the application, and hearings were held in December of 1987. Appellant amended its application to increase the amount it desired to surcharge its customers, and the Commission in May entered Order Number 9, which denied the application entirely. This appeal followed.

---

[1] Related costs include consultant fees, air monitoring, some special equipment purchases, reinsulating costs, and attorney's fees and witness fees for the Commission hearings.

Arkansas Code Annotated Sections 23-4-501 through 23-4-509 (1987) were enacted for the following purposes, as stated in Section 23-4-501:

> (a) It is recognized that legislative or administrative regulations impose certain legal requirements upon public utilities relating to the protection of the public health, safety, or the environment; and that:
>
> (1) In order to comply with such legislative or regulatory requirements, utilities are required to make substantial additional investments or incur additional expenses with respect to existing facilities used and useful in providing service to the utility's customers; and
>
> (2) Although such additional investments and expenses are necessary in order to provide service to the utility's customers, such additional investments and expenses are not included in the utility's rate and cannot be recovered in a prompt and timely fashion under existing regulatory procedures.
>
> (b) It is intended by the General Assembly that utilities be permitted to recover in a prompt and timely manner all such costs incurred by utilities in order to comply with such legislative or regulatory requirements through an interim surcharge which, if approved, shall be effective until the implementation of new rate schedules in connection with the next general rate filing of the utility wherein such additional investments or expenses can be included in the utility's base rate schedules. However, the costs to be recovered through such interim surcharge shall not include increases in the cost for employment compensation or benefits as a result of legislative or regulatory action.

It is undisputed that the insulation material appellant spent money to remove was asbestos as that term is defined in 40 C.F.R. 61 Subpart M, Section 61.141. The parties agree that the primary point of controversy in this case involves a dispute about whether the asbestos was "friable." Section 61.141 provides the

definition: "*[f]riable asbestos* material means any material containing more than 1 % asbestos by weight that hand pressure can crumble, pulverize, or reduce to powder when dry." Section 61.147 provides that friable asbestos material must be removed during "demolition" or "renovation" work (defined at 61.141), or that other measures be taken to prevent the release of asbestos fibers into the outside air during the renovation or demolition. Appellant argues that the insulation material was friable and, therefore, federal regulations mandated the expenditures to remove it. The appellee contends that the asbestos was not in fact friable and, even if it were, removal was not the only alternative available under the law and other less costly abatement procedures may have been available. The Commission's order, however, does not address whether removal, as opposed to other abatement procedures, was a reasonable course of action.

Three witnesses for appellant testified at the hearing on the surcharge application. One witness testified for AOG as to the costs of the asbestos removal and the allocation of those costs based on customer class and jurisdiction. AOG's attorney and risk manager, Michael J. Callan, testified as to the circumstances giving rise to the asbestos removal expenses. He said that AOG had employed an asbestos consulting firm to analyze insulating materials in its buildings and found that some of the materials contained up to thirty percent (30%) chrysotile, a form of asbestos.

There was evidence that AOG needed to install a new chiller for its main office building in order to keep its air conditioning unit working, and this project might necessitate disturbing asbestos insulating material on pipes and ducts. When asbestos insulation is disturbed, its particles or fibers can become airborne and, when inhaled or ingested, can cause cancer and other serious diseases. Callen testified that the asbestos was not in good condition and that the insulation was "friable," which means that it could be pulverized by hand pressure. He said the asbestos removal was accomplished over the Thanksgiving weekend of 1987.

Thomas W. Rimmer, a consultant for AOG, also testified as to the necessity of removing the asbestos. He stated that the insulation was in "fair to good condition" in both buildings, but that it had been damaged in some locations and appeared to be

coming loose and could fall in other spots. Rimmer testified in detail as to the various health hazards posed by exposure to asbestos fiber. He testified that removal of the asbestos material in conjunction with AOG's renovation work was prudent and that it was his opinion that Section 61.147 of the National Emissions Standards for Hazardous Air Pollutants (NESHAPS)[2] mandated removal.

An accounting witness for the PSC staff testified as to the proposed allocation of costs if the Commission allowed recovery, but stated her testimony was limited only to that issue and was not to be construed as support for the recovery thereof. An engineer for the PSC staff, Ralph W. Sandage, testified in opposition to the application. He said that there was no detectable level of asbestos found in air samples taken by appellant and, consequently, no danger. He also testified, in essence, that it was the renovation and repair work which necessitated the asbestos removal and that the removal was not a direct result of legislative or regulatory mandate. Sandage testified that some of the asbestos removed by the Company was not necessary at all in connection with the work. He testified that he had visited the renovation sites and had personally observed that the ACM did not disintegrate when touched and that it seemed solid. The witness testified that he had no problem with AOG removing the asbestos but objected to the recovery of expenses therefor under Act 310.

The PSC found in its order that the asbestos was not friable. The dispositive question before us in this appeal is whether that finding is supported by substantial evidence.

Arkansas Code Annotated Section 23-2-423(c)(3), (4), and (5) (1987) defines and limits our review of actions of the Public Service Commission as follows:

> (3) The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive.

> (4) The review shall not be extended further than to determine whether the Commission's findings are supported by substantial evidence and whether the Commis-

---

[2] Promulgated pursuant to the Clean Air Act and codified at 40 C.F.R. 61(m).

sion has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or of the State of Arkansas.

(5) All evidence before the Commission shall be considered by the court regardless of any technical rule which might have rendered the evidence inadmissible if originally offered in the trial of any action at law or in equity.

On appeal, we give due regard to the expertise of the Commission, which derives its authority from the Arkansas General Assembly. *City of Fort Smith* v. *Arkansas Public Service Commission,* 278 Ark. 521, 648 S.W.2d 40 (1983). The Arkansas Public Service Commission has broad discretion in exercising its regulatory authority. *Associated Natural Gas Co.* v. *Arkansas Public Service Commission,* 25 Ark. App. 115, 752 S.W.2d 766 (1988); *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission,* 19 Ark. App. 322, 720 S.W.2d 924 (1986); *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission,* 18 Ark. App. 260, 715 S.W.2d 45 (1986); *Walnut Hill Telephone Co.* v. *Arkansas Public Service Commission,* 17 Ark. App. 259, 709 S.W.2d 96 (1986). Judicial inquiry terminates if the action of the Commission is supported by substantial evidence and its action is not unjust, unreasonable, unlawful or discriminatory. *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission,* 24 Ark. App. 142, 751 S.W.2d 8 (1988). It is the province of the Commission as the trier of fact, to assess the credibility of the witnesses, the reliability of their testimony, and the weight to be accorded the evidence presented. *Arkansas Public Service Commission* v. *Continental Telephone Co.,* 262 Ark. 821, 561 S.W.2d 645 (1978); *Associated Natural Gas Co., supra; General Telephone Company of the Southwest* v. *Arkansas Public Service Commission,* 23 Ark. App. 73, 744 S.W.2d 392 (1988).

To establish an absence of substantial evidence to support the decision the appellant must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded men could not reach its conclusion. [citation omitted] . . . [T]he question is not whether the

testimony would have supported a contrary finding but whether it supports the finding that was made.

*Williams* v. *Scott*, 278 Ark. 453, 455, 647 S.W.2d 115, 116 (1983). A decision of an administrative agency may be supported by substantial evidence even though this court might have reached a different conclusion had we heard the case *de novo* or sat as the trier of fact. *Fouch* v. *State, Alcoholic Beverage Control Division*, 10 Ark. App. 139, 662 S.W.2d 181 (1983).

■ On the record before us, we cannot say the finding of the Commission that the asbestos material in appellant's buildings was not friable is not supported by substantial evidence. Since this issue is dispositive and we affirm the Commission's finding in this regard, the other issues before us need not be reached.

Affirmed.

ROGERS, J., concurs.

COOPER, J., and CORBIN, C.J., dissent.

JUDITH ROGERS, Judge, concurring. I concur with the majority's decision in keeping with our standard of review. Our standard gives due deference to the Commission's expertise, and therefore I cannot disagree with the findings of fact made by the Commission. Even though we might have reached a different conclusion as the trier of fact, it is not our place on appellate review to substitute our judgment for that of the Commission, which exercises authority given it by the General Assembly. I do not share the view argued by appellant's attorney that, if we do not apply this statute to the facts in this case, we are in any way deciding that this statute does not mean exactly what it says.

However, I am troubled by one aspect of the Commission's analysis of the federal regulations involved in this case. The Commission correctly observed in its order that the Occupational Safety and Health Act (OSHA), 29 U.S.C. Sections 651 *et seq.*,[1] was enacted to promote the protection of workers from industrial injury, and that the Clean Air Act, 42 U.S.C. Sections 7401 *et seq.*,[2] was enacted for the broad purpose of protecting and

---

[1] Pursuant to which 29 U.S.C. Sections 651 *et seq.* were promulgated.

[2] Pursuant to which 40 C.F.R. 61, Subpart M Sections 61.141 *et seq.* were

promoting the health of the general public. The Commission concluded that the OSHA regulations apply only for the protection of workers in the workplace and not for the protection of the general public. Therefore, it concluded that those regulations could not apply in an Act 310 surcharge case because Act 310 is only designed to allow recovery of expenditures due to regulations designed to protect the general public. The Commission also found that the general public was not in any danger from exposure to asbestos at appellant's facilities and that any risk of any exposure whatsoever was only to employees of appellant, who are not members of the "general public." The Commission therefore concluded that, since there was no danger to members of the "general public," the provisions of 40 C.F.R. do not apply and Act 310 is again not an appropriate mechanism for cost recovery.

I find these views inconsistent, unrealistic, and too narrow. Under the logic employed by the Commission, the broad protective purposes of regulations pertaining to asbestos exposure cannot be fairly met in an appropriate case. I am extremely troubled by the Commission's position that employees of appellant are not members of the "general public' and thus are not entitled to the elementary protections afforded other citizens by the Clean Air Act. In my view, the fact that the appellant's employees are members of a "subclass" of the general public by virtue of their employment does not affect the undeniable fact that the "general public" includes everyone.

JAMES R. COOPER, Judge, dissenting. I dissent. It is my view that the Commission's finding that the asbestos was not friable is not supported by substantial evidence; further, I disagree with the Commission's view that federal regulations did not mandate removal of the asbestos in this case and that the expenditures are not recoverable under Act 310 of 1981.

The majority bases its decision on the Commission's finding that the asbestos in appellant's buildings was not friable. "Friable asbestos" is defined in 40 C.F.R. 61, Subpart M, Section 61.141, to be material that "hand pressure can crumble, pulverize, or

---

promulgated.

reduce to powder when dry." It seems to me that the evidence is considerable that the asbestos in appellant's facilities was indeed friable, and its removal was therefore mandated under federal law. We should be cognizant of powerful public policy considerations which should encourage the safe removal of this dangerous material whenever possible. One court has observed the following about the material with which the appellant here found itself confronted:

> Asbestos, a family of inorganic fibrous mineral substances once thought to be "wonder materials" and commonly used in building construction, has been identified in recent years as a formidable public health threat. Exposure to airborne asbestos fibers—often one thousand times thinner than a human hair—may induce several deadly diseases: asbestosis, a nonmalignant scarring of the lungs that causes extreme shortness of breath and often death; lung cancer; gastrointestinal cancer; and mesothelioma, a cancer of the lung lining or abdomen lining that develops 30 years after the first exposure to asbestos and that, once developed, invariably and rapidly causes death.

*Environmental Encapsulating Corporation* v. *City of New York*, 855 F.2d 48, 50 (1988). Clearly, our interpretation of federal regulations and Act 310 of 1981 should be done in keeping with both the letter and spirit of laws written to protect our citizens from catastrophic illnesses caused by asbestos.

Two witnesses, one of whom had extensive experience in dealing with asbestos, testified with regard to the friability of the asbestos in the appellant's buildings. Michael J. Callan, an attorney who serves as the appellant's risk manager, testified in detail about the appellant's buildings and said that the asbestos was in poor condition and was friable. He testified that the renovation work necessarily involved disturbing the asbestos and that removal of the asbestos was necessary in order to prevent its release into the atmosphere. Thomas W. Rimmer, a consultant for the appellant whose qualifications include training in the area of industrial hygiene and who has considerable expertise with asbestos, testified in detail as to the condition of the asbestos in the appellant's facilities. It was his unequivocal opinion that the asbestos should be removed. The only witness who offered

contradictory testimony was an engineer for the PSC staff, who candidly admitted that he had no particular expertise with regard to asbestos material. The PSC's witness initially testified that the asbestos was "not as friable as AOG suggests." However, on cross-examination, he altered his position and stated, "I will agree, either the material is friable or not friable." I simply cannot agree that the PSC staff's evidence from a single witness with no particular asbestos expertise can be said to be substantial in light of the clear, unequivocal, and convincing testimony of the appellant's witnesses.

I also disagree with the Commission's position that 40 C.F.R. Section 61.140 *et seq.* and 29 C.F.R. Section 1926.58 do not mandate the removal of friable asbestos in this case. Both sections clearly state that friable asbestos must be dealt with in a cautious and thoughtful manner when encountered. Various handling procedures are set forth, and the language of the regulations is mandatory. When one encounters friable asbestos material, the regulations leave no room for quarrel; the regulations require compliance. I simply cannot see how it can be said that these regulations with regard to an undeniably hazardous material can be lightly ignored in this case. I read the clear language of the federal regulations as leaving the appellant no option but to comply with their mandates, and, because the appellant chose to remove the asbestos material rather than take other steps to conform to the regulations, the only inquiry the PSC should have made was as to the reasonableness of the expenditures and the alternatives available in lieu of removal. The PSC did not make such an inquiry.

Finally, and in consideration of the above, I disagree that Act 310 of 1981 does not allow the appellant recovery through a surcharge of the expenditures in connection with the asbestos removal. Because the pertinent federal regulations mandated removal of the asbestos in the circumstances encountered by the appellant, the expenses were incurred as a "direct" result of regulatory requirements and are therefore recoverable through a surcharge under the plain language and legislative intent of Ark. Code Ann. Section 23-4-501 *et seq.* (1987). I would reverse and remand with directions that the PSC calculate the appropriate surcharge the appellant should be allowed to impose on its customers to recover the expenses incurred in connection with the

removal of asbestos from its facilities.

I am authorized to state that Chief Judge Corbin joins in this dissent.