Mr. Marcus C. Devine, Director Arkansas Department of Environmental Quality 8001 National Drive Little Rock, AR 72219-8913
Dear Director Devine:
I am writing in response to your request for my opinion on the following question:
 Is the authority of the Arkansas Department of Environmental Quality to administer the Arkansas Pollution Control and Ecology Commission Regulation Number 21, the Arkansas Asbestos Abatement Regulation, and the Removal of Asbestos Material Act (A.C.A. § 20-27-1001 et seq.) pre-empted by the federal Occupational Safety and Health Administration Act?
RESPONSE
It depends. Any provision of state law that addresses an issue covered by OSHA regulations will be preempted unless OSHA approves the state regulation. See 29 U.S.C. § 667. However, the state may regulate without approval on issues not addressed by OSHA regulations. Only a trier of fact upon review of Arkansas' regulatory scheme as implemented can determine whether any impermissible conflict exists between Arkansas and OSHA regulations regarding asbestos abatement.
The state law referenced in your request all deals with standards for the removal of asbestos products from buildings in the course of demolition or renovation. The purpose of this state law is aptly summarized in A.C.A. § 20-27-1001 (Repl. 2000) which provides:
 The purpose of this subchapter is to protect the public health and safety and the environment and to qualify the Arkansas Department of Environmental Quality to adopt, administer, and enforce a program for licensing training providers involved with the training of regulated asbestos professionals, for licensing asbestos abatement consultants and asbestos abatement contractors, and for certifying air monitors, contractor-supervisors, inspectors, management planners, project designers, and workers involved with demolitions, renovations, and asbestos-response actions in which regulated asbestos-containing materials are disturbed in accordance with the provisions of this subchapter, the Arkansas Water and Air Pollution Control Act, § 8-4-101
et seq., and regulations issued pursuant thereto.
By comparison, the Occupational Safety and Health Act ("OSHA"),29 U.S.C. § 651 et seq., has a broader focus, generally obliging employers to provide working conditions that "are free from recognized hazards that are causing or are likely to cause death or serious bodily harm" and dictating compliance with safety standards promulgated by the Secretary of Labor. 29 U.S.C. §§ 654(a)(1) and (2). See Arkansas Oklahoma Gas Corp.v. Arkansas Public Service Commission, 27 Ark. App. 277, 283 (1997) (noting that OSHA was enacted for the general purpose of "promot[ing] the protection of workers from industrial injury").
The United States Code addresses the issue of OSHA preemption at29 U.S.C. § 653(b)(4), which provides:
 Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.
See also Atlas Roofing Co. v. Occupational Safety Commission,430 U.S. 442, 445 (1976) (noting that while OSHA creates new duties and remedies, "existing state statutory and common-law remedies for actual injury and death remain unaffected"). The Code at 29 U.S.C. § 667
(section 18 of the Act) further contains the following regarding the interplay of state and federal law:
 (a) Assertion of State standards in absence of applicable Federal standards
 Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 665 of this title.
 (b) Submission of State plan for development and enforcement of State standards to preempt applicable Federal standards
 Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupation safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.
In Pedraza v. Shell Oil Co., 942 F. 2d 48, 51-52 (1st Cir. 1991), the First Circuit Court of Appeals cogently summarized the effect of the above preemption statutes:
 The scope of OSHA preemption is outlined in two sections: (i) section 18, which represents a general statement of preemptive intent, and (ii) section 4(b)(4), the "savings clause," which excepts from preemption a spectrum of state laws.
 At its outer reaches section 18 preemption does not obtain unless there is an unapproved assertion of "jurisdiction under State law over any occupational safety or health issue" as to which a federal "standard" is already in place. See 29 C.F.R. 1901.2 ("Section 18(a) of the Act is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which a Federal standard has been issued under section 6 of the Act.") (emphasis added); Associated Industries of Massachusetts, 898 F.2d at 278 (Section 18 "provides that if a federal standard on an occupational safety or health issue is in effect, a state cannot promulgate an occupational safety or health standard relating to that issue, unless it first submits the state plan to OSHA for approval."). See also Puffer's Hardware Inc. v. Donovan, 742 F.2d 12, 16 (1st Cir. 1984); National Solid Wastes Management Ass'n v. Killian, 918 F.2d 671, 677-78 (7th Cir. 1990).
 Section 3 in turn defines an occupational safety and health" standard" as one which "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8) (1982); see also People v. Chicago Magnet Wire Corp., 126 Ill.2d 356, 128 Ill.Dec. 517, 520, 534 N.E.2d 962, 965 (§ 18 precludes "a State's development and enforcement of `occupational health and safety standards.'") (discussing OSHA preemption of State criminal laws) (citations omitted), cert. denied, 493 U.S. 809, 110 S.Ct. 52, 107 L.Ed.2d 21 (1989). Thus, it is not surprising that substantial authority exists for the view that section 18 preempts the unapproved establishment of state standards and regulatory schemes in competition with OSHA, see, e.g., Environmental Encapsulating Corp. v. City of New York, 855 F.2d 48, 55 (2d Cir. 1988); New Jersey State Chamber of Commerce v. Hughey, 774 F.2d 587, 592-93 (3d Cir. 1985), appeal after remand, 868 F.2d 621 (3d Cir.), cert. denied, 492 U.S. 920, 109 S.Ct. 3246, 106 L.Ed.2d 593 (1989). . . .
In accordance with the foregoing, I believe the Arkansas Department of Environmental Quality is authorized to administer any and all statutes and regulations it has been legislatively charged with administering, subject only to the condition that it cannot administer any law or regulation that conflicts with the provisions of OSHA. See Gade v. SolidWastes Management Assn., 505 U.S. 88 (1992) (acknowledging that OSHA standards preempt state regulations on the same issue). In this regard, I should note that A.C.A. § 20-27-104(2), which addresses the scope of the Department's authority, expressly directs that the Department's standards with respect to "the abatement of friable and nonfriable asbestos materials . . . be as stringent as those standards adopted by the United States Environmental Protection Agency pursuant to section 112 of the federal Clean Air Act." Assuming the Department of Environmental Quality's standards comply with this mandate and further do not constitute unapproved regulation on an issue addressed by OSHA, I believe a court would enforce the state standards. However, only a finder of fact can determine whether these conditions have actually been met in the present instance.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh