ARKANSAS OKLAHOMA GAS CORPORATION
*v.* ARKANSAS PUBLIC SERVICE COMMISSION

89-150                                    783 S.W.2d 350

Supreme Court of Arkansas
Opinion delivered February 5, 1990
[Rehearing denied March 12, 1990.*]

*Rose Law Firm*, by: *Charles W. Baker*, for appellant.

*Arthur H. Stuenkel*, Ass't Counsel, for appellee Arkansas Public Service Commission.

---

*Price, J., not participating.

*Steve Weaver*, Chief Legal Counsel, for amicus curiae Arkansas Dep't of Pollution Control and Ecology.

ROBERT H. DUDLEY, Justice. Appellant, Arkansas Oklahoma Gas Corp., owns and utilizes two buildings in Fort Smith which contained asbestos insulation. One of the buildings is appellant's main office building where the insulation was in a mechanical equipment room located in the basement. The other building is a garage. Appellant decided to make renovations in both the mechanical equipment room of the main office and in the garage. Before making those renovations, however, appellant had all of the asbestos removed from each building. Appellant filed an interim rate schedule with appellee and imposed an interim surcharge to recover the costs of removing the asbestos pursuant to Ark. Code Ann. §§ 23-4-501 to -509 (1987). After hearings on the surcharge, appellee, Arkansas Public Service Commission, denied the rate applications and ordered that the money collected from the surcharge be refunded. That decision was appealed to the Court of Appeals which affirmed the commission's decision. *Arkansas Oklahoma Gas Corp.* v. *Arkansas Public Service Comm'n,* 27 Ark. App. 277, 770 S.W.2d 180 (1989). We granted appellant's petition for review and reverse the commission's decision.

There is really only one issue raised by this appeal, although appellant has divided it into three points of appeal. The issue is whether the above cited statutes provide for the recovery of the costs associated with the removal of asbestos. We hold that they do.

First, Ark. Code Ann. § 23-4-502 (1987) states in pertinent part:

> Any public utility . . . may recover all costs and expenses reasonably incurred by such utility as a direct result of legislative or regulatory requirements relating to the protection of the public health, safety, and the environment . . . .

Second, 40 C.F.R. § 61.147, a federal regulation promulgated by the Environmental Protection Agency in order to implement the Clean Air Act, 42 U.S.C. §§ 7401-7642, relates "to the protection of the public health, safety, and the environ-

ment." That regulation provides in pertinent part:

> Each owner or operator to whom this section applies *shall comply* with the following procedures to prevent emissions of particulate asbestos material to the outside air:
>
> (a) Remove friable asbestos materials from a facility being demolished or renovated before any wrecking or dismantling that would break up the materials or preclude access to the materials for subsequent removal.
>
> . . .

(Emphasis added.)

In determining whether section 61.147 applied to appellant, it is necessary to examine section 61.145(d) which provides that, "If at least 80 linear meters (260 linear feet) of friable asbestos materials on pipes or at least 15 square meters (160 square feet) of friable asbestos materials on other facility components are stripped or removed at a facility being renovated, all the requirements of §§ 61.146 [notice] and 61.147 apply."

It is not disputed that the material removed from both buildings contained asbestos. Neither is it disputed that the alterations made to each building constituted "renovations" as that term is defined in the regulations. In addition, appellant introduced over eighty (80) photographs showing the pertinent areas of each building, both before and after the asbestos removal process. They show that the amount of asbestos removed from each building met the minimum requirements set forth in 40 C.F.R. § 61.145(d).

The commission, however, found that the asbestos material was not "friable." Findings of fact by the commission are conclusive if they are supported by substantial evidence. Ark. Code Ann. § 23-2-423 (1987). However, in this case there was no substantial evidence to support the commission's finding of fact.

"*Friable asbestos* material means any material containing more than 1 percent asbestos by weight that hand pressure can crumble, pulverize, or reduce to powder when dry." 40 C.F.R. § 61.147(a). Thus, under federal regulations, *the key question in determining friability is whether the asbestos mate-*

*rial can be crumbled, pulverized or reduced to powder by hand pressure.* Appellee relies upon the testimony of Ralph Sandage, one of appellee's engineers, in supporting its finding that the material was not friable. However, Sandage never testified that he used the proper test in determining the friability of the material. Instead, he testified the material would not disintegrate upon being touched, pushed, poked, brushed, or bumped and that it came out in a clump and seemed solid; but, the following question and answer were critical on this issue, and show that Sandage did not apply the proper test under the terms of the federal regulation:

Q. Did you try to crumble it or crush it?

A. No, I just pushed—I pushed on—it was a section of a wall in the garage, and I pushed on the asbestos, and it didn't do anything basically.

To answer your question, I did not attempt to crumble it.

On the other hand, Michael Callan, a witness for appellant, testified directly about the friability of the material in the terms used by the regulation:

A: Friable is defined as being able to be pulverized with hand pressure.

Now, the materials in that room—possibly from even the pictures you can tell that you could scrape them off with your hand and pulverize them. They are the very definition of friability.

Further, Thomas Rimmer, a consultant in the field of industrial hygiene, was retained by appellant to advise in the proper handling of the asbestos material. He testified that removal of the asbestos was the only practical solution and that the expense of partial removal of the asbestos would be much greater in the long run than a one-time complete removal.

Accordingly, we conclude that § 61.147(a) was applicable to appellant and that under that regulation appellant was required to remove the asbestos material before undertaking its renovations. Further, the costs associated with the removal of the asbestos are a direct result of this regulatory requirement and

clearly related to the protection of the public health, safety, and the environment as set forth in Ark. Code Ann. § 23-4-502 (1987).

Reversed and remanded to the Public Service Commission for specific findings on the amount of allowable expenses.

HICKMAN and HAYS, JJ., dissent.

GLAZE, J., concurs.

STEELE HAYS, Justice, dissenting. The Public Service Commission heard disputed testimony on the issue of whether the asbestos was friable and determined that it was not. Under the law, that finding of fact by the Commission is *conclusive* if supported by substantial evidence. Ark. Code Ann. § 23-2-423 (1987).

The majority opinion dismisses the expert testimony of Ralph Sandage, on whose opinion the Commission relied, by quoting his response to a single question, ignoring entirely the balance of his testimony. The Court of Appeals, in affirming the Public Service Commission in an en banc decision, characterized the Sandage testimony:

> An engineer for the PSC staff, Ralph W. Sandage, testified in opposition to the application. He said that there was no detectable level of asbestos found in air samples taken by appellant and, consequently, no danger. He also testified, in essence, that it was the renovation and repair work which necessitated the asbestos removal and that the removal was not a direct result of legislative or regulatory mandate. Sandage testified that some of the asbestos removed by the Company was not necessary at all in connection with the work. He testified that he had visited the renovation sites and had personally observed that the ACM did not disintegrate when touched and that it seemed solid. The witness testified that he had no problem with AOG removing the asbestos but objected to the recovery of expenses therefor under Act 310.

The supplemental abstract summarizes a pertinent part of Sandage's testimony as follows:

> I observed the asbestos material in the mechanical equipment room being tested by one of the contractors bidding

on the contract for removal of asbestos. The contractor took an object and punched it into the material. The contractor gouged out a piece of the material. The piece came out as a clump. The asbestos material seemed solid. I observed the contractors testing material on the walls in the garage in the same manner as they had in the mechanical equipment room. I touched the material to determine the consistency. The material was spongy and did not fall apart. If the material at either building was poked, brushed or bumped the material would not disintegrate.

I suggest that testimony is substantial evidence by any standard. The majority has also disregarded the settled rule that it is the province of the Commission to assess the credibility of the witnesses, the reliability of their testimony and the weight to be accorded the evidence presented before the Commission. *General Telephone Company of the Southwest* v. *Arkansas Public Service Commission*, 23 Ark. App. 73, 744 S.W.2d 392 (1988); *Associated Natural Gas Co.* v. *Arkansas Public Service Commission*, 25 Ark. App. 115, 752 S.W.2d 766 (1988); *Arkansas Public Service Commission* v. *Continental Telephone Co.*, 262 Ark. 821, 561 S.W.2d 645 (1978):

> To establish an absence of substantial evidence to support the decision the appellant must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded men could not reach its conclusion. [citation omitted] . . . [T]he question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made.

I submit the appellant has failed to make that demonstration and I respectfully dissent.

HICKMAN, J., joins this dissent.