

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV-13-667

| | |
|---|---|
| DUSTIN MCDANIEL, ARKANSAS ATTORNEY GENERAL, CONSUMER UTILITIES RATE ADVOCACY DIVISION | **Opinion Delivered** October 8, 2014 |
| APPELLANT | APPEAL FROM THE ARKANSAS PUBLIC SERVICE COMMISSION [DOCKET NO. 12-056-U] |
| V. | |
| ARKANSAS PUBLIC SERVICE COMMISSION and ENTERGY ARKANSAS, INC. | |
| APPELLEES | REVERSED AND REMANDED |

**ROBERT J. GLADWIN, Chief Judge**

This case comes to us from two orders of the Arkansas Public Service Commission in Docket No. 12-056-U. In Order No. 7, the Commission found that a temporary surcharge implemented by appellee Entergy Arkansas, Inc., complied with Act 310 of 1981. In Order No. 8, the Commission approved Entergy's resulting rate schedule. The Consumer Utilities Rate Advocacy Division of the Arkansas Attorney General's Office ("the AG") appeals both orders after unsuccessfully urging the Commission to consider certain grounds for disapproval of the surcharge. For reversal, the AG argues that the Commission erred in failing to make findings as to those grounds and in relying on a previous Commission ruling from another docket to decide an issue in this case. We agree with both of the AG's points and reverse and remand for additional findings by the Commission.

SLIP OPINION

## I. *Act 310 of 1981*

Act 310, which is codified at Arkansas Code Annotated sections 23-4-501 to -509 (Repl. 2002), allows a utility to recover certain expenditures by imposing a surcharge on its customers outside the context of a general rate case. Recovery is allowed for expenditures reasonably incurred as a direct result of legislative or regulatory requirements relating to the protection of the public health, safety, and the environment. *See* Ark. Code Ann. § 23-4-502.

The surcharge mechanism is unusual in that it does not require Commission approval before its implementation. Rather, the surcharge becomes effective immediately upon being filed by the utility. Ark. Code Ann. § 23-4-504. Within thirty days of the filing and upon reasonable notice to the utility, the Commission must conduct an investigation concerning the reasonableness of the surcharge. Ark. Code Ann. § 23-4-505. Following the investigation and a hearing, the Commission may modify or disapprove the surcharge. Ark. Code Ann. § 23-4-507(a).

## II. *Entergy's Act 310 Filing*

On July 26, 2012, Entergy filed an interim rate surcharge under Act 310. Entergy's notice to the Commission and accompanying attachments declared that, since July 1, 2010 (the end of the pro-forma period in its last general rate case), it had increased its capital expenditures by approximately $39 million based on three government mandates: 1) Nuclear Regulatory Commission (NRC) requirements to upgrade security at the Arkansas Nuclear One power plant; 2) Federal Energy Regulatory Commission (FERC) requirements to upgrade information-technology security; and 3) Arkansas Highway & Transportation

Department (AHTD) requirements to relocate poles and other facilities during road projects. Entergy asserted that, pursuant to Act 310, the expenditures were reasonably incurred as a direct result of legislative or regulatory requirements relating to the protection of public health and safety and were therefore recoverable through an interim surcharge under Act 310.

The AG opposed the filing, arguing that Entergy's expenditures did not meet the purposes of Act 310. According to the AG, Act 310 was intended to remedy a situation in which a utility faced a "gross inequity" by being forced to spend "abnormal, significant amounts of money for the public good for which the public is not providing fair compensation in the form of just, reasonable, and sufficient rates." In this instance, the AG claimed, Entergy's expenditures were neither substantial enough, nor new and different enough, to warrant Act 310 treatment, and were in fact "probably included in current rates." The AG additionally claimed that Entergy's highway-relocation expenditures did not result from legal requirements relating to the protection of public health and safety.

### III. *Commission Hearing*

The Commission held a hearing on Entergy's interim surcharge on February 19, 2013. Entergy witnesses Bryan Ford and Christopher Peters testified that the company had recently expended money for NRC and FERC security measures in order to comply with laws or regulations relating to public health and safety. They explained that, in response to concerns that terrorists would attack nuclear plants or disrupt a utility's computer system, the NRC and FERC promulgated new regulations requiring upgrades to physical and cyber security. With regard to Entergy's highway-relocation expenditures, Bernard Neumeier testified that, as the

3

result of government highway projects, Entergy had spent money to relocate its distribution lines and poles. Neumeier referenced the AHTD's Utility Accommodation Policy (UAP), which mandated the relocations. He said that failure to comply with the UAP would create hazardous conditions for the public during highway construction. Neumeier also testified that the Commission had ruled in a previous docket, No. 91-078-U, that the UAP's provisions were related to public safety.

Entergy witnesses Michael Considine and Cindy Layne testified as to the manner in which Entergy's surcharge was calculated. They determined which of the expenditures at issue were not already included in Entergy's rate base, and, after performing the regulatory accounting, computed a final retail revenue requirement of about $4.4 million (later modified to about $4 million), for which each residential-rate customer would pay approximately twenty-four cents per month.

PSC Staff witness Jeff Hilton agreed that Entergy's expenditures were in compliance with Act 310. He recommended approval of the interim surcharge, with the previously mentioned accounting adjustments.

William Marcus testified for the AG that a utility's interim expenditures under Act 310 must be for the purpose of substantial additional investments. He stated that the $4 million sought by Entergy did not appear to meet the substantiality requirement because it paled in comparison to Entergy's overall revenue requirement and gross plant investment. Marcus also stated that a utility must demonstrate a "gross inequity" before utilizing the Act 310 interim surcharge. He testified that Entergy could not meet that standard because the company would

SLIP OPINION

soon file a new general rate case[1] in which it could recover its expenditures and, in any event, Entergy may have been over-earning since its previous general rate case and could recover its expenditures without seeking interim relief. Regarding the highway-relocation expenditures, Marcus stated that they were not the result of a legal or administrative mandate relating to public health and safety as required by Act 310. He also testified that the Commission should not rely on its ruling in Docket 91-078-U, where it held that AHTD's UAP provisions were related to public safety.[2]

### IV. *Commission's Ruling*

Following the hearing, the Commission ruled in Order No. 7 that Entergy's surcharge complied with Act 310. The Commission rejected the AG's arguments that Entergy's expenditures were not made for the purposes set forth in Act 310, stating:

> The expenses included for recovery in this Docket are consistent with the purposes of Act 310. The Commission finds that the expenditures for the security upgrades at [Arkansas Nuclear One] and the information technology upgrades made in compliance with FERC CIP Standards are made for the purposes relating to the protection of the public health, safety or the environment, and, therefore, are properly recoverable[.]

The Commission also rejected the AG's argument that Entergy's highway-relocation expenditures were not the result of legal mandates relating to public health and safety, stating:

> The issue of Act 310 recovery for highway relocation costs for utility facility relocations has been previously resolved before this Commission. In Docket No. 91-078-U, General Staff vigorously litigated its position that the AHTD UAP was not a

---

[1]Entergy filed a general rate case in March 2013, with new rates going into effect in December 2013.

[2]Other witnesses testified before the Commission, but their testimony is not critical to our discussion.

SLIP OPINION

safety regulation that would entitle Arkansas Louisiana Gas Company to recovery under Act 310. However, the Administrative Law Judge, sitting pursuant to delegation of the Commission, found there was some evidence that safety factors were comprehended within the UAP provisions . . . Order No. 4 of Docket No. 91-078-U has been undisturbed for over twenty years [.]

(Emphasis in original.)

Upon the entry of Order No. 7, Entergy submitted a rate schedule for the surcharge, which the Commission approved in Order No. 8. Thereafter, the AG filed a petition for rehearing, which was deemed denied. The AG then filed a timely notice of appeal with our court. Two arguments are presented for reversal: 1) the Commission erred in failing to make findings as to certain grounds urged by the AG for disapproval of the surcharge; and 2) the Commission assigned improper "preclusive weight" to its ruling in Docket 91-078-U.

## V. *Standard of Review*

Our review of Public Service Commission decisions shall not be extended further than to determine whether the Commission's findings are supported by substantial evidence and whether the Commission has regularly pursued its authority, including a determination of whether the Commission's order violated any right of the petitioner under the laws or constitutions of the United States or the State of Arkansas. Ark. Code Ann. § 23-2-423(c)(4) (Repl. 2002). Nevertheless, it is for our court to decide questions of law and to direct the Commission where it has not pursued its authority in compliance with the statutes governing it. *Brandon v. Ark. W. Gas Co.*, 76 Ark. App. 201, 61 S.W.3d 193 (2001). In particular, interpretation of a statute is a judicial function, and the Commission's construction is not binding on the court. *Sw. Bell Tel. Co. v. Ark. Pub. Serv. Comm'n*, 69 Ark. App. 323, 13

6

S.W.3d 197 (2000). Still, the interpretation of a statute by an agency charged with its execution is highly persuasive, and while not conclusive, should not be overturned unless it is clearly wrong. *Id.*

## VI. *Discussion of Act 310 Issue*

Arkansas Code Annotated section 23-4-507(a)(1) permits the Commission to modify or disapprove an interim surcharge if the underlying expenditures "were not made for the purposes set forth in section 23-4-501." Section 23-4-501 reads as follows:

23-4-501 Legislative findings and intent.

(a) It is recognized that legislative or administrative regulations impose certain legal requirements upon public utilities relating to the protection of the public health, safety, or the environment, and that:

(1) In order to comply with such legislative or regulatory requirements, utilities are required to make substantial additional investments or incur additional expenses with respect to existing facilities used and useful in providing service to the utility's customers; and

(2) Although such additional investments and expenses are necessary in order to provide service to the utility's customers, such additional investments and expenses are not included in the utility's rates and cannot be recovered in a prompt and timely fashion under existing regulatory procedures.

(b) It is intended by the General Assembly that utilities be permitted to recover in a prompt and timely manner all such costs incurred by utilities in order to comply with such legislative or regulatory requirements through an interim surcharge which, if approved, shall be effective until the implementation of new rate schedules in connection with the next general rate filing of the utility wherein such additional investments or expenses can be included in the utility's base rate schedules. However, the costs to be recovered through such an interim surcharge shall not include increases in the cost for employment compensation or benefits as the result of legislative or regulatory action.



Before the Commission, the AG argued that Entergy's expenditures were not made for the purposes set forth in section 23-4-501 because they were not "substantial additional investments," and they were already included in Entergy's rates or could be promptly recovered in a general rate case. The AG also relied on the emergency clause of Act 310, which states in pertinent part:

> Existing statutes of this State do not provide for a procedure to permit immediate recovery of additional expenditures with respect to existing utility facilities incurred by public utilities as a result of legislative or regulatory requirements without filing a general rate case with the Public Service Commission. *These circumstances result in a gross inequity in that utilities must make expenditures to provide facilities which are clearly in the public interest which costs cannot be recovered in a prompt and timely manner by the utility*.

Act 310 of 1981, § 6 (emphasis added).

The Commission, without making findings as to the factors urged by the AG, ruled that Entergy's expenditures were consistent with the purposes of Act 310 because they were made in response to government regulations for purposes relating to the protection of the public health and safety, or the environment. Essentially, the Commission determined that its scrutiny of the surcharge was limited to whether Entergy's expenditures met that singular criterium.

On appeal, the AG argues that the Commission's interpretation of section 23-4-501 was too restrictive and that the statute sets forth several purposes that, if not met, could be grounds for disapproval of the surcharge. Citing language contained in section 23-4-501, the AG asserts that the Commission should have considered and made findings as to whether Entergy's expenditures were 1) made with respect to existing facilities; 2) substantial; 3) additional; 4) not included in the utility's rates; 5) unrecoverable in a prompt and timely

fashion under existing regulatory procedures; and 6) not employment or compensation benefits.

By contrast, Entergy and the PSC Staff support the Commission's narrow inquiry.[3] They argue that the language in section 23-4-501 that utilities are being required to make "substantial additional investments" that are "not included in the utility's rates," etc., is simply a recital of the state of affairs that existed at the time the Act was passed; in other words, a justification for its enactment. They conclude that, once the Commission determines that the utility's expenditures resulted from legislative or administrative regulations relating to the protection of the public health, safety, or the environment, no additional findings by the Commission are necessary.

Given the parties' and the Commission's differing constructions of section 23-4-501, our task on appeal is one of statutory interpretation. The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Berryhill v. Synatzske*, 2014 Ark. 169, 432 S.W.3d 637. We also construe statutes so that, if possible, every word is given meaning. *Dachs v. Hendrix*, 2009 Ark. 542, 354 S.W.3d 95. Moreover, we do not engage in statutory interpretations that defy common sense and produce absurd results. *Id.*

---

[3]The PSC Staff cites *Arkansas Oklahoma Gas Corp. v. Arkansas Public Service Commission*, 301 Ark. 259, 783 S.W.2d 350 (1990), to support a narrow inquiry. However, the inquiry in *Arkansas Oklahoma Gas* was limited by the nature of the case, which differs considerably from the case at bar.

Applying these precepts, we disagree with Entergy and the PSC Staff that the text of section 23-4-501 contains a mere recital of fixed conditions that are presumed to exist when an interim surcharge is filed. Such an interpretation forecloses the possibility that a utility, despite meeting the overarching purpose of incurring expenditures based on legislative or administrative regulations relating to the protection of the public health, safety, or the environment, could impose a surcharge that runs afoul of the statute as a whole. Under Entergy's and the PSC Staff's interpretation, the Commission would be powerless to disapprove the surcharge in that instance or, at the very least, the Commission would not be required to make a finding on that issue, even if the surcharge was challenged on that ground.

We deem the more common-sense interpretation to be the one posed by the AG. Section 23-4-501, as its title states, contains the legislative intent in passing Act 301. As such, it recognizes that, not only have legislative or administrative regulations imposed legal requirements on utilities relating to public health and safety or the environment, but that, in order to comply with those legal mandates, utilities are being required to make substantial additional investments or incur additional expenses with respect to existing facilities; and that, although these additional investments and expenses are necessary, they are not included in the utility's rates and cannot be recovered in a prompt and timely fashion under existing regulatory procedures. The statute then goes on to say that the legislature intends that a utility be permitted to timely and promptly recover "all such costs" incurred by the utility in order to comply with government requirements, through an interim surcharge. Thus, the statute, when read in full, sets forth not only the single purpose of allowing recovery of expenditures

made in complying with government health-and-safety or environmental regulations but the purpose of allowing recovery of "such costs" when certain described situations exist. *See, e.g.*, *Ark. Gas Consumers, Inc. v. Ark. Pub. Serv. Comm'n*, 354 Ark. 37, 118 S.W.3d 109 (2003) (rejecting Act 301 as justification for a surcharge in part because it did not involve a utility's "existing facilities").[4]

Based on the foregoing, we hold that the Commission's interpretation of Act 310 was clearly wrong and that additional findings by the Commission are required. The Commission's decision must be in sufficient detail to enable a court to determine the controverted question presented by the proceeding. Ark. Code Ann. § 23-2-421(a) (Repl. 2002). And, although the Commission is not required to make findings of fact upon all items of evidence or issues, the findings should be sufficient to resolve the material issues. *Pressler v. Ark. Pub. Serv. Comm'n*, 2011 Ark. App. 512, 385 S.W.3d 349.

That being said, we decline to embrace the AG's implication that the Commission must, in all instances, consider and make findings as to each and every factor contained in section 23-4-501. Our holding is that, when an opposing party seeks disapproval of a surcharge based on any of those factors, the Commission must make a finding as to such factors. We therefore reverse and remand on this point to allow the Commission to make additional findings as to the challenges to the surcharge made by the AG.

VII. *Discussion of Commission's Reliance on Previous Ruling*

---

[4]This case also cited the emergency clause in Act 310 as an interpretive aid to the legislature's intention. 354 Ark. at 54–55, 118 S.W.3d 119–20.

The AG argued to the Commission that Entergy's highway-relocation expenditures were not incurred as the result of government requirements relating to public health and safety. The AG was referring to the AHTD's 2010 Utility Accommodation Policy, which provides that a utility must bear certain costs of relocating its facilities, such as poles and lines, during highway construction projects. The Commission ruled simply that it had decided over twenty years earlier in Docket 91-078-U, which found that provisions of the AHTD Policy "relate to safety." The AG now argues that the Commission gave an improper "preclusive effect" to the former docket. We agree.

The doctrine of res judicata may be applied in an administrative proceeding. *See Hamilton v. Ark. Pollution Control & Ecol. Comm'n*, 333 Ark. 370, 969 S.W.2d 653 (1998). However, the issue-preclusion aspect of res judicata only operates as a bar to relitigation of a matter previously litigated when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 206 S.W.3d 842 (2005). The AG was not a party to Docket 91-078-U and therefore did not have a full and fair opportunity to litigate the issues in that docket. Moreover, our courts have held that res judicata has little application to regulatory action in fixing utility rates because rate-making is a legislative function. *See Sw. Bell Tel. Co. v. Ark. Pub. Serv. Comm'n*, 267 Ark. 550, 593 S.W.2d 434 (1980). In fact, every rate order may be superseded by another, not only when conditions change but when administrative understanding of those conditions change. *Id.*

Based on these authorities, we reverse and remand on this point so that the Commission may make findings on this issue raised by the AG without solely relying on its 1991 order.

Reversed and remanded.

PITTMAN, WALMSLEY, HIXSON, and WOOD, JJ., agree.

BROWN, J., dissents.

**WAYMOND M. BROWN, Judge, dissenting.** Today, I believe the majority has overstepped the bounds of our standard of review and misapplied pertinent case law; therefore, I must respectfully dissent.

In cases involving public utilities we must give due regard to the limitations on the scope of our judicial review and defer to the expertise of the Commission.[1] If an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, nor discriminatory, the appellate court must affirm the Commission's actions.[2] To establish an absence of substantial evidence, the appellant must demonstrate that the proof before the Commission was so nearly undisputed that fair-minded persons could not reach its conclusion.[3] Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis, and something more than mere error is necessary to

---

[1]*See Southwestern Bell Tel. Co. v. Ark. Pub. Serv. Comm'n*, 267 Ark. 550, 556, 593 S.W.2d 434, 439 (1980); *Arkansas Power & Light Co. v. Ark. Pub. Serv. Comm'n*, 226 Ark. 225, 289 S.W.2d 668 (1956).

[2]*Pressler v. Ark. Pub. Serv. Comm'n*, 2011 Ark. App. 512, at 5, 385 S.W.3d 349, 353.

[3]*Entergy Arkansas, Inc. v. Ark. Pub. Serv. Comm'n*, 104 Ark. App. 147, 289 S.W.3d 513 (2008).

meet the test.[4] To set aside the Commission's action as arbitrary and capricious, the appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts or circumstances of the case.[5] However, judicial review is not reduced to a mere formality, and it is for the courts to say whether there has been an arbitrary or unwarranted abuse of the commission's discretion, even though considerable restraint should be observed in finding such an abuse.[6]

Rather than give due regard to the decisions of an administrative agency created for the purpose of regulating public utilities, the majority has deemed itself the overseer of the Commission. The majority has not evaluated whether there existed substantial evidence to support the Commission's decision. It has not found that the Commission's determination was unjust, arbitrary, unreasonable, unlawful, or discriminatory. Instead, it has turned today's case on a question of whether the Commission "regularly pursued its authority," thereby directing our standard of review towards one of statutory interpretation when it should be deference. In doing so it has forgotten that it is not within the purview of our courts to advise a utilities commission how to discharge its functions in arriving at findings of facts or in exercising its discretion.[7]

---

[4]*Bryant v. Ark. Pub. Serv. Comm'n*, 55 Ark. App. 125 931 S.W.2d 795 (1996).

[5]*Entergy Arkansas, Inc. v. Ark. Pub. Serv. Comm'n, supra.*

[6]*Southwestern Bell Tel. Co. Ark. Pub. Serv. Comm'n, supra*; *Incorporated Town of Emerson v. Ark. Pub. Serv. Comm'n*, 227 Ark. 20, 295 S.W.2d 778.

[7]*Ohio Bell Tel. Co. v. Public Utilities Comm'n*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

SLIP OPINION

I would similarly treat the majority's analysis of the Commission's reliance on its previous ruling. Again, the majority is essentially arguing that the Commission is not regularly pursuing its authority, perhaps even doing less work when addressing the highway-relocation projects, because the Commission has simply relied on an older ruling. While I agree with the majority that the Commission is placing much preclusive effect on a former docket, rather than fully expounding on each point of Section 501 in justifying the particular surcharge, I would once more direct the majority to our standard of review. The Commission exists, at least in part, because it is made up of more qualified personnel to make such determinations, and our court should embrace that deference. Our court need only determine whether the Commission possessed the authority to take the action that it did under the applicable statute.[8]

In addition to issues regarding the standard of review, I must disagree with the majority's application of *Arkansas Gas Consumers, Inc. v. Arkansas Public Service Commission*.[9] I agree with the majority that the text of Section 501 contains more than a mere recital of fixed conditions that are presumed to exist when an interim surcharge is filed. However, I believe *Arkansas Gas Consumers* only vaguely aids in this proposition as it is too distinguishable, and in fact, the 2003 opinion seems to assist in supporting the validity of the surcharge under Act 310. Not only was the surcharge in *Arkansas Gas Consumers* invalid because it did not involve a utility's existing facilities, but it was outside the purpose of Act 310 almost in its entirety. There, the Commission, on its own, created an "extraordinary

---

[8]*Ark. Elec. Energy Consumers, Inc. v. Ark. Pub. Serv. Comm'n*, 2012 Ark. App. 264, 410 S.W.3d 47.

[9]354 Ark. 37, 118 S.W.3d 109 (2003).

15

program" to assist customers whose gas had been disconnected during a particularly harsh winter.[10] In rejecting the Commission's surcharge, our supreme court noted that despite the fact that the statute contemplates a utility's request to recover additional expenses under Section 501, it was the Commission that developed the policy, mandated it, and implemented it.[11] The court further noted that the policy did not fall into to the category of "expenses reasonably incurred . . . as a direct result of legislative or regulatory requirements relating to the protection of public health, safety, and the environment."[12] Such is not the case with the surcharge before us now. Here the request for the surcharge was made by Entergy and in response to government mandates from the Nuclear Regulatory Commission, the Federal Energy Regulatory Commission, and the Arkansas Highway and Transportation Department.

If anything, *Arkansas Gas Consumers* actually supports the validity of the two orders from Docket No. 12-056-U. Writing for the court, Justice Brown stated: "Our discussion today is not intended to in any way limit or hamper legitimate surcharges" but only to show the features of the policy that the "PSC had no legislative authority to develop and mandate."[13] The Commission is a creature of the General Assembly with its power and authority limited to that which the legislature confers upon it.[14]

---

[10]*Id*. at 43.

[11]*Id*. at 54.

[12]*Id*.

[13]*Id*. at 60.

[14]*Hempstead County Hunting Club, Inc. v. Ark. Pub. Serv. Comm'n*, 2010 Ark. 221, at 13, 384 S.W.3d 477.



Based on the foregoing reasons, I respectfully dissent.

*Dustin McDaniel*, Att'y Gen., by: *Emon O. Mahony*, Ass't Att'y Gen., for appellant.

*Tucker Raney*, Assistant General Counsel of Entergy Services, Inc.; *N. Wesley Hunt*, Counsel of Entergy Services, Inc.; *Perkins & Trotter, PLLC*, by: *Scott C. Trotter*; and *Wright, Lindsey & Jennings*, by: *N. M. Norton*, for appellees.