Cite as 2026 Ark. App. 348

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-24-54

CLARK COUNTY, ARKANSAS, EX REL.
TROY TUCKER, IN HIS OFFICIAL
CAPACITY AS COUNTY JUDGE OF
CLARK COUNTY, ARKANSAS,
INDIVIDUALLY AND O/B/O A CLASS
OF SIMILARLY SITUATED PARTIES

APPELLANT

V.

AT&T CORP. AND SOUTHWESTERN
BELL D/B/A AT&T ARKANSAS

APPELLEES

Opinion Delivered May 20, 2026

APPEAL FROM THE CLARK COUNTY
CIRCUIT COURT
[NO. 10CV-17-28]

HONORABLE GARY M. ARNOLD,
JUDGE

AFFIRMED IN PART; REVERSED AND
REMANDED IN PART

**MIKE MURPHY, Judge**

This appeal arises from a class-action lawsuit filed by Clark County against AT&T

Corp. and Southwestern Bell d/b/a AT&T Arkansas (collectively, "AT&T"), which alleged

that AT&T unlawfully charged Clark County and other Arkansas counties three fees for the

counties' use of AT&T's telephone services. The circuit court certified a class and, following

a bench trial, entered judgment in favor of AT&T on all claims. We affirm in part and

reverse and remand in part.

I. *Background*

AT&T provides telephone services to Clark County. As part of providing these services, AT&T assesses a 911 fee, a Special Municipal Charge, and an Arkansas Universal Service Fee. The 911 fee is an emergency telephone service charge that AT&T is required, under the Arkansas Public Safety Communications Act ("APSCA"), to bill and collect from its "service users" and remit to the government. Ark. Code Ann. § 12-10-318(f)(4) (Repl. 2016). The Special Municipal Charge is a charge that AT&T collects from "its customers residing in each municipality" to recover the amount of the franchise fee assessed by the municipality on AT&T for authorization to use the municipal streets and rights-of-way to deploy AT&T's facilities. Ark. Code Ann. § 14-200-101(b)(2) (Supp. 2025). The Arkansas Universal Service Fee is a surcharge collected by AT&T to recover mandatory payments that AT&T must make to the Arkansas High Cost Fund ("AHCF"). Ark. Code Ann. § 23-17-404(2)(B) (Repl. 2015). Clark County filed a class-action lawsuit against AT&T alleging that the imposition of these three fees against the county was unlawful. The circuit court thereafter certified the following class:

> All Arkansas counties, or their agencies or departments, which have been charged or have paid Defendant's 911, or Arkansas Universal Service or special municipal charge fees or related charges from the five years immediately prior to the filing of this lawsuit up through the date of the entry of judgment in this case.

In the operative complaint, filed May 31, 2018, Clark County requested relief pursuant to Arkansas Code Annotated section 16-111-101 et seq., seeking a declaratory judgment that:

2

(1) Clark County and the class members are not subject to 911 fees under the provisions of APSCA, Ark. Code Ann. § 12-10-300, et seq.;

(2) Clark County and the class members are not subject to payment of a Special Municipal Charge;

(3) AT&T has no basis to collect from Clark County and the class members an Arkansas Universal Service Fee;

(4) AT&T improperly charged, billed, and collected public funds from Clark County and from the class members;

(5) Such improper and unlawful fees include, but are not limited to, the following:

    (a) 911 fees and associated administrative charges collected by AT&T;

    (b) "Arkansas Universal Service" charges;

    (c) "Special municipal charges"; and

    (d) taxes imposed on each of these improper charges;

(6) Clark County and the class members are entitled to a refund of all such fees which were unlawfully exacted from public funds.

AT&T answered and asserted that Clark County's claim challenging the "Arkansas Universal Service Fee" is subject to the primary jurisdiction of the Arkansas Public Service Commission ("PSC"). The same day, AT&T filed a third-party complaint against the city of Arkadelphia and the city of Gurdon, alleging that "Arkadelphia and Gurdon are or may be liable for part of [Clark County's] claim against AT&T," specifically relating to the "Special Municipal Charge."

AT&T subsequently filed a "Motion to Dismiss or Stay Pursuant to the Doctrine of Primary Jurisdiction." The motion stated that AT&T had, on July 2, 2018, filed an

3

application for a declaratory ruling by the PSC relating to the "Arkansas Universal Service Fee" surcharge and noted that the PSC has regulatory authority over the AHCF. According to the motion, AT&T specifically "asked the PSC to hold that nothing in the AHCF statute or the PSC's AHCF regulations exempts an intrastate retail telecommunications service customer from AHCF surcharges based on its status as a governmental entity." AT&T contended that because the PSC has primary jurisdiction over claims relating to the AHCF, the circuit court should dismiss or stay Clark County's claim challenging the "Arkansas Universal Service Fee" pending the outcome of the administrative proceeding in the PSC. The circuit court did not rule on AT&T's motion.

On October 30, 2018, the PSC issued an administrative order declaring (1) that Clark County, in its capacity as intrastate retail telecommunications service customer, is subject to AHCF surcharges like any other retail customer; and (2) that governmental entities that purchase intrastate retail telecommunications services are not exempt from Arkansas Code Annotated section 23-17-404(b)(2)(B) and AHCF Rule 4.04(A).

The parties thereafter litigated cross-motions for summary judgment, which the circuit court denied. After the class received notice, the circuit court conducted a bench trial on December 9, 2022. At the trial, the circuit court heard testimony from Clark County Judge Troy Tucker and accepted agreed-upon stipulations of facts and exhibits filed by the parties.

On November 1, 2023, the circuit court entered a final order setting out its findings of fact and conclusions of law. The court concluded in the order that Clark County failed

4

to establish that either the county or any class members are exempt from any of the three disputed fees.

The court found that Clark County and the class members fall within the statutory definition of a "service user" and are therefore subject to the 911 fees imposed under the APSCA. In reaching this conclusion, the court found that Clark County is a person who was "provided landline telephone service" with the capability of calling 911. "Like any other telephone customer," the court said, "Clark County and its employees could use Clark County's telephone service to dial 911 in the event of an emergency."[1] The court further found that Clark County, like any other Arkansas county, is a person "not exempt from county or municipal taxes or utility franchise assessments."

In rejecting Clark County's challenge to the "Special Municipal Charge," the court found that special municipal fees are permitted by Arkansas law and further found that nothing exempted Clark County or the class members from such charges. As to Clark County's arguments raising public-purpose-doctrine and constitutional concerns, the court found that "AT&T is the party that is being taxed, and the special municipal fee is merely a statutorily authorized pass through charge." While Clark County "may not have specifically appropriated funds to pay franchise fees or to make AHCF contributions," the court found that it had "full authority and appropriations to pay its telephone bills." Further, "[b]y paying

---

[1]There was testimony at trial that AT&T charged and collected 911 fees on more than one "phantom" phone line—lines that the county later discovered actually were misconnected or disconnected and without service altogether.

its bills, including the special municipal fee," the court concluded, "Clark County was not giving 'financial aid' to AT&T—it was merely paying its bills, in an amount sufficient for AT&T to recover its costs of providing telephone services." The court noted, "Nothing in the Arkansas Constitution prohibits counties from paying for the services they receive."

The court likewise rejected Clark County's challenge to the "Arkansas Universal Service Fee." The court found that nothing in the AHCF statute or in the PSC's AHCF regulations exempted Clark County, or any other county customer, from this surcharge. The court found, as a separate basis to reject this claim, that "the PSC has already squarely decided this dispute," and the doctrine of res judicata applies to the PSC's decision. Additionally, the court found no merit in Clark County's constitutional and public-purpose-doctrine arguments relating to the universal service fees for similar reasons as the special municipal charges, As a separate basis for rejection, the court found that these arguments "constitute an improper collateral attack on the Arkansas PSC's final order, as Clark County could have and should have raised the same arguments before the PSC, and/or on appeal of the PSC's decision."

Finally, the court found that Clark County's constitutional and public-purpose doctrine arguments are "procedurally improper." More specifically, it found that to the extent the county argues that the statutes authorizing AT&T's discretionary surcharges to recover its municipal franchise fees and AHCF contributions are "unconstitutional or violate the public-purpose doctrine," the county was required to give notice to the Attorney General pursuant to Arkansas Code Annotated section 16-111-111(a). The court found that "Clark

6

County has not complied with this provision, and hence its constitutional and public-purpose doctrine attacks are improper in this forum."

Clark County now appeals. For reversal, Clark County asserts that the circuit court erred (1) by ruling that the APSCA allows AT&T to collect 911 fees from political subdivisions; (2) by ruling that AT&T could collect the "Arkansas Universal Service Fee" and "Special Municipal Charge" on county telephone lines; (3) in ruling that Clark County's challenge to the "Arkansas Universal Service Fee" was barred by principles of res judicata; and (5) in concluding that notice to the Attorney General was required.

## II. *Standard of Review*

The standard of review on appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *City of Rockport v. City of Malvern*, 2010 Ark. 449, at 6, 374 S.W.3d 660, 663. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed." *Id*. "Facts in dispute and determinations of credibility are solely within the province of the fact-finder." *Id*.

Issues of statutory construction are reviewed de novo. *Id*. This court is not bound by the circuit court's interpretation of law, but "in the absence of a showing that the circuit court erred in its interpretation of law, that interpretation will be accepted as correct on appeal." *Id*.

## III. *Discussion*

### A. 911 fees

7

Clark County's first argument is that the circuit court erred in ruling that the APSCA allows AT&T to collect 911 fees from political subdivisions such as counties. We agree. This issue turns on statutory interpretation, which we review de novo. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, at 9, 400 S.W.3d 701, 707.

The basic rule of statutory construction is to give effect to the legislative intent underlying the statute. *Sw. Bell Tel. Co. v. Ark. Public Serv. Comm'n*, 69 Ark. App. 323, 329, 13 S.W.3d 197, 200 (2000). When the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Helena-W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 580, 268 S.W.3d 879, 884 (2007). In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and give meaning and effect to every word in the statute, if possible. *Id.*

A statute is ambiguous if it is open to more than one construction. *Id.* When the statute is ambiguous, we are permitted to look at the language of the statute, its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. *Sw. Bell Tel. Co.*, 69 Ark. App. at 329, 13 S.W.3d at 201. As a guide in ascertaining the legislature's intent, we examine the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretations, and all other matters of common knowledge within the court's jurisdiction. *Id.* In determining legislative intent, we must look at the whole act and, as far as practicable,

8

give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. *Id.* at 333, 13 S.W.3d at 203. We do not, however, engage in statutory interpretations that defy common sense and produce absurd results. *McDaniel v. Ark. Public Serv. Comm'n*, 2014 Ark. App. 529, at 9, 444 S.W.3d 380, 385.

The 911 fee at issue arises under the APSCA.[2] The General Assembly passed the APSCA in furtherance of "the public interest to shorten the time and simplify the method required for a citizen to request and receive emergency aid." Ark. Code Ann. § 12-10-302(a) (Repl. 2016). The legislative purpose behind the APSCA is statutorily codified:

> (1) Establish the National Emergency Number 911 (nine, one, one) as the primary emergency telephone number for use in participating political subdivisions of the State of Arkansas;
>
> (2) Authorize each chief executive to direct establishment and operation of 911 public safety communications centers in their political subdivisions and to designate the location of a 911 public safety communications center and agency which is to operate the center. . . .;
>
> (3) Encourage the political subdivisions to implement 911 public safety communications centers; and
>
> (4) Provide a method of funding for the political subdivisions which will allow them to implement, operate, and maintain a 911 public safety communications center.

Ark. Code Ann. § 12-10-302(e) (Repl. 2016).

---

[2]A former version of the APSCA was amended and replaced by the Arkansas Public Safety Communications and Next Generation 911 Act of 2019, effective July 24, 2019. Ark. Code Ann. § 12-10-301 (Supp. 2025).

In line with these stated goals, the APSCA authorizes and encourages the "chief executive" of each "political subdivision" to create a 911 public safety communications center. *See* Ark. Code Ann. § 12-10-304 (Repl. 2016). In this vein, the Act permits the "governing authority" of each "political subdivision," when so authorized by the local taxpayers, to levy an "emergency telephone service charge," or 911 fee, to be imposed on local telephone service lines. Ark. Code Ann. § 12-10-318(a)(1)(A) (Repl. 2016). "Upon its own initiative, the governing authority of the political subdivision may call such a special election to be held in accordance with § 7-11-201 et seq." Ark. Code Ann. § 12-10-318(a)(2) (Repl. 2016).

As the terms are defined in the Act, the "chief executive" of a political subdivision means "the Governor, county judges, mayors, city managers, or city administrators of incorporated places, and is synonymous with head of government, dependent on the level and form of government." Ark. Code Ann. § 12-10-303(5) (Repl. 2016). And the "governing authority" of a political subdivision means "county quorum courts and governing bodies of municipalities." Ark. Code Ann. § 12-10-303(12) (Repl. 2016).

A 911 fee, or "emergency telephone service charge," imposed under the APSCA "shall be added to and may be stated separately in the billing by the service supplier to the service user."[3] Ark. Code Ann. § 12-10-318(f)(4) (Repl. 2016). The Act provides: "Every billed service

---

[3]The APSCA, as it existed before 2019, provided that the emergency telephone service charges collected by the service supplier shall be remitted to the "political subdivision" on a quarterly basis. Ark. Code Ann. § 12-10-320(c)(1) (repealed 2019). The Act also permitted the service supplier "to retain as an administrative fee an amount equal to one percent (1%)

user shall be liable for any service charge imposed under this subsection until it has been paid to the service supplier." Ark. Code Ann. § 12-10-318(f)(5) (Repl. 2016). The Act authorizes the "political subdivision" to "pursue against a delinquent service user any remedy available at law or in equity for the collection of a debt." Ark. Code Ann. § 12-10-318(g) (Repl. 2016).

A "service user," within the meaning of the APSCA, is "any person, company, corporation, business, association, or party not exempt from county or municipal taxes or utility franchise assessments who is provided landline telephone service, CMRS service, voice over internet protocol service, or any nontraditional phone service with the capability of placing a 911 call in the political subdivision." Ark. Code Ann. § 12-10-303(26) (Repl. 2016). Notably, the Act does not include a "political subdivision" or "chief executive" or "governing authority" of a political subdivision among the list of entities identified as a "service user."

Considering that the Act refers repeatedly to a "political subdivision," or to the "chief executive" or "governing authority" of a political subdivision, both within and beyond the definitional section, this contrast is significant. Where the legislature includes a term in one part of a statute but omits it in another, we should not expand those categories or add omitted entities. *MacSteel Div. of Quanex v. Ark. Okla. Gas. Corp.*, 363 Ark. 22, 31, 210 S.W.3d 878, 883–84 (2005). Here, the repeated used of "political subdivision" throughout the Act—

_____

from the gross receipts to be remitted to the political subdivision." Ark. Code Ann. § 12-10-320(c)(3) (repealed 2019).

paired with the absence from the "service user" definition—confirms that political subdivisions such as counties and municipalities are not "service users" within the meaning of the statute.

Further, not only does the Act omit political subdivisions from the definition of service user, but its language also expressly demonstrates legislative intention to exclude certain entities as a service user—namely, any "party exempt from county or municipal taxes or utility franchise assessments." We disagree with the circuit court's conclusion that political subdivisions, including counties such as Clark County, are not exempt from county or municipal taxes, as contemplated in the Act, because they may sometimes pay some unidentified local sales tax. It is well established that constitutional and statutory exemptions from taxation refer to "ordinary taxes, for the general purposes of government—state, county, or municipal[.]" *Bensberg v. Parker*, 192 Ark. 908, 95 S.W.2d 892, 893 (1936).

Counties, under the Arkansas Constitution, "are civil divisions of the state for political and judicial purposes, and are its auxiliaries and instrumentalities in the administration of its government." *Lake v. Tatum*, 175 Ark. 90, 1 S.W.2d 554, 556 (1927). As such, property held by a county in connection with its governmental functions is within the tax exemption clause of article 16, § 5(b) exempting public property used exclusively for public purposes. *City of Hope v. Dodson*, 166 Ark. 236, 266 S.W. 68, 69 (1924). It is no surprise that local governmental subdivisions of the state, like Clark County, by and large are not subject to taxation. *See Washington Cnty. v. Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, at 14, 480 S.W.3d at 182 (discussing immunity versus exemption and holding that the

12

University of Arkansas, as an instrumentality of the state, is immune from ad valorem taxation).

The 911 fee at issue here, moreover, is a charge levied and imposed by a political subdivision that is operating a 911 public safety communications center. Again, one of the main purposes of the APSCA is to provide funding to political subdivisions to carry out these very operations. The Act achieves this purpose, in part, by authorizing "county quorum courts," as the governing authority of the political subdivision, to levy a 911 fee on local telephone lines to be collected by the telephone-service supplier and remitted to the county. It makes little sense for a county to levy a charge to be imposed on the county's phone lines to fund the county's operations. As our supreme court has said:

> Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for governmental purposes. All such property is taxable if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the offices employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the statute and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact.

*Bensberg*, 192 Ark. 908, 95 S.W.2d at 894 (1936) (quoting *Board of Imp. v. Sch. Dist. of Little Rock*, 56 Ark. 354, 19 S.W. 969 (1892)).

For these reasons, we hold that the circuit court erred in its interpretation of the APSCA. We therefore reverse the circuit court's judgment as to the 911 fee and remand the case to the circuit court for further proceedings, including consideration of issues concerning a refund of the fee.

B. Arkansas Universal Service Fee and Special Municipal Charge

In its second point, Clark County argues that the circuit court erred in upholding the imposition of the "Arkansas Universal Service Fee" and the "Special Municipal Charge." Clark County contends that the counties' payment of both charges is not in exchange for telephone services but to help AT&T pay the government. According to Clark County, a diversion of public funds to a private purpose in this manner offends the Arkansas Constitution and is in direct violation of the public-purpose doctrine. We disagree.

1. *Arkansas universal service fee*

The parties stipulated at trial that "AT&T charges its intrastate retail telecommunications service customers, including County customers, a surcharge called the AR Universal Service fee to recover the Arkansas High Cost Fund fees it pays to the Arkansas High Cost Fund." The Arkansas High Cost Fund ("AHCF") was established "to promote and assure the availability of universal service at rates that are reasonable and affordable and to provide for reasonably comparable services and rates between rural and urban areas." Ark. Code Ann. § 23-17-404(a)(1). The General Assembly granted the PSC the authority to implement and make funds available for the AHCF. The AHCF provides funding to eligible telecommunications carriers serving rural or high-cost areas of the state. Ark. Code Ann. §

14

23-17-404(a)(2)–(3). Each telecommunications provider in the state is required to pay an amount into the AHCF that is proportionate to its intrastate retail service revenues. Ark. Code Ann. § 23-17-404(b)(1), (2)(A)(i). The AHCF statute provides: "Because customers of the telecommunications providers that would pay the AHCF charge receive the benefits of a universal network, the telecommunications providers may surcharge their customers to recover the AHCF charges paid by the telecommunications provider.[4] Therefore, the AHCF charge is not a tax and is not affected by state laws governing taxation." Ark. Code Ann. § 23-17-404(b)(2)(B).

In short, we agree with the conclusions reached by the circuit court. The AHCF payments that telecommunications service providers like AT&T must pay into the fund are a required cost of doing business in Arkansas. Telecommunications providers are permitted to recover those costs of doing business from their customers. *See* Ark. Admin. Code 126.03.10-4.04, AHCF Rule 4.04(A) ("A telecommunications provider may recover the amount of its contribution to the AHCF from its interstate retail telecommunications service customers."). The "AR Universal Service Fee" on AT&T's bills to customers, including Clark County, merely recovers some of the costs necessary for AT&T to provide service to those customers.

---

[4]AHCF Rule 10 defines "customer" as "any person, firm, partnership, cooperative corporation, corporation or lawful entity that has ordered and is receiving retail telecommunications services supplied by any telecommunications provider and is receiving a bill from the provider for services associated with one or more retail access lines." Ark. Admin. Code 126.03.10.

15

Clark County Judge Troy Tucker testified at trial that there is an appropriation to pay the county's monthly utility bills, and those funds are used to pay the phone bill each month. The AHCF, as mentioned, serves an important public interest in promoting the availability of universal service at affordable costs. Indeed, among other things, the AHCF provides funding to "Arkansas counties for 911 public safety answering points in the amount of two million dollars ($2,000,000) annually." Ark. Code Ann. § 23-17-404(e)(6)(A)(iv).

For these reasons, we cannot say that the circuit court erred in upholding the imposition of the "Arkansas Universal Service Fee." Accordingly, we affirm the circuit court's judgment on this point.

2. *Special municipal charge*

The parties also filed agreed stipulations of fact relating to the "Special Municipal Charge," which AT&T charges its local telephone service customers, including customers that are counties. The special municipal fee is intended to recover franchise fees that Arkansas cities impose on AT&T for permission to put AT&T's facilities in the municipal streets and rights-of-way. According to the parties' stipulated facts, the cities of Arkadelphia and Gurdon each impose a 5% franchise fee upon AT&T by ordinance. AT&T, in turn, charges customers who obtain local telephone service within those cities a special municipal fee to recover the franchise fees imposed upon it by each city.

For the purpose of providing "public utility necessities for itself and for the inhabitants of any municipality, the mayor and city council, or the other governing bodies of municipalities . . . may contract on its own behalf, and on behalf of the inhabitants of the municipality," with a utility company and may grant to the company "the privilege of using the streets, alleys, and public grounds of the municipality for such purposes, on such rates, charges, and terms as may be agreed upon." Ark. Code Ann. § 14-54-704(a). Further, municipalities have the right to establish terms and conditions upon which public utilities may be permitted to operate within the borders of said municipalities and may by ordinance impose a reasonable franchise fee for service rendered by any public utility occupying streets and rights-of-way within the municipality. Ark. Code Ann. § 14-200-101(b)(1). "In common parlance, such franchise fees are, in form, rental payments for a public utility's use of the municipality's right-of-way[.]" *City of Little Rock v. AT&T Communications of the Sw., Inc.*, 318 Ark. 616, 620, 888 S.W.2d 290, 292 (1994). A public utility is permitted by law "to collect from its customers residing in each municipality an amount that equals the franchise fee assessed by the municipality on the public utility." Ark. Code Ann. § 14-200-101(b)(2).

We cannot say that the circuit court erred in upholding the imposition of the "Special Municipal Charge" AT&T collects from its customers located within the city limits of Arkadelphia and Gurdon, including Clark County, to recover the franchise fees assessed by those cities on AT&T. The municipal surcharge, like the universal-service fee, is a cost of doing business that AT&T is permitted by law to recover from its customers. We agree with the circuit court's conclusion that the "Special Municipal Charge" is not an improper private

17

use of funds. Instead, it is directly tied to AT&T's use of city rights-of-way to provide services to customers within the city limits, including county customers such as Clark County. AT&T could not furnish these services without paying the franchise fees. Accordingly, we affirm the circuit court's judgment on this point.

## C. Res Judicata

Clark County next argues that the circuit court erred in ruling that its claims relating to the "Arkansas Universal Service Fee" were barred by principles of res judicata because of the PSC's October 30, 2018 declaratory order. As we have already addressed the claims involving the "Arkansas Universal Service Fee" and have found them to be without merit, we need not discuss whether these claims are also barred by res judicata. *See Cent. Okla. Pipeline, Inc.*, 2012 Ark. 157, at 19, 400 S.W.3d at 712–13.

## D. Notice to the Attorney General

Clark County's final argument is that the circuit court erred in concluding that the county's public-purpose-doctrine and constitutional arguments were "procedurally improper" because the county failed to notify the Attorney General. Arkansas law provides that when declaratory relief is sought, if the statute is alleged to be unconstitutional, "the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard." Ark. Code Ann. § 16-111-111(a). The purpose of the notice statute is to prevent a statute from being declared unconstitutional without a full adjudication and adversarial parties. *Sherland v. Sherland*, 2015 Ark. App. 342, at 5, 465 S.W.3d 3, 7.

18

We disagree with the circuit court's conclusion that notice was required. Clark County did not allege that any statute is unconstitutional. Rather, the county asserted "public funds" claims and alleged that AT&T's exaction of the disputed charges from government subdivisions, like counties, was either not authorized by law or contrary to law. Because notice to the Attorney General was not required in these circumstances, we must reverse the circuit court's ruling on this issue.

Affirmed in part; reversed and remanded in part.

TUCKER, THYER, WOOD, and BROWN, JJ., agree.

BARRETT, J., dissents.

STEPHANIE POTTER BARRETT, Judge, dissenting. I respectfully dissent from the majority's decision to reverse the circuit court on the issue of the 911 fees. I would affirm the circuit court's well-reasoned conclusion that Clark County falls within the statutory definition of a "service user" and is therefore subject to the fee imposed under the Arkansas Public Safety Communications Act ("APSCA").

This appeal presents an issue of statutory interpretation, which we review de novo. *See Harts v. Damsky*, 2024 Ark. App. 604, 704 S.W.3d 638. Even so, our review is guided by the plain language of the statute, and where the circuit court correctly interprets and applies that language, affirmance is required. *Id.* Here, the circuit court carefully analyzed the statutory framework and concluded that Clark County received landline telephone services capable of placing 911 calls and therefore satisfied the definition of a "service user" under

19

Arkansas Code Annotated section 12-10-303(27). The circuit court further found that no express statutory exemption applies to Clark County. I agree.

The APSCA expressly provides that the 911 service charge "shall have uniform application and shall be imposed throughout the political subdivision to the greatest extent possible in conformity with availability of the service in any area of the political subdivision." Ark. Code Ann. § 12-10-318(e). The circuit court correctly recognized that this language reflects the legislature's intent that participation in the funding structure be broad and uniform, not selectively limited. Construing the statute to exempt municipalities would conflict with the legislature's directive that the charge be imposed "throughout" the political subdivision "to the greatest extent possible."

The circuit court also correctly relied on the settled principle that tax-exemption provisions must be strictly construed against the exemption, with any doubts resolved in favor of taxation. *See Miller Cnty. v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998) (citing *Pledger v. Noritsu Am. Corp.*, 320 Ark. 371, 896 S.W.2d 595 (1995)). The APSCA contains no explicit exemption for counties or municipalities. Thus, as the circuit court concluded, Clark County's position necessarily depends on implying an exemption that the legislature did not provide. Our rules of statutory construction do not permit such a result. For these reasons, I must dissent.

*Turner & Turner, P.A.*, by: *Todd Turner* and *Dan Turner*, for appellant.

*Smith Williams LLP*, by: *Richard Smith*; *Mayer Brown, LLP*, by: *Kevin Ranlett*, *pro hac vice*; and *Heather B. New*, *pro hac vice*, for appellees.

*Colin R. Jorgenson*, for amicus curiae Association of Arkansas Counties